NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241442-U

NO. 4-24-1442

IN THE APPELLATE COURT

FILED
February 3, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JASON J. BATES, | ) | No. 24CF280 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Lannerd and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant, Jason J. Bates, appeals the trial court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act. 102-1104, § 70 (eff. Jan 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). On appeal, defendant argues (1) the trial court erred in holding that GPS monitoring could not mitigate any threat he posed and (2) his counsel was ineffective for not objecting to the timeliness of the State's petition to deny pretrial release. For the reasons that follow, we affirm the trial court's decision.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Defendant's Initial Charge

¶ 5          On Sunday, October 13, 2024, defendant was charged by information with one count of domestic battery. The information alleged, on or about October 12, 2024, having previously been convicted of domestic battery, defendant knowingly struck L.B. in the face, in violation of section 12-3.2(a)(1) of the Criminal Code of 2012 (720 ILCS 5/12-3.2(a)(1) (West 2022)). The same day defendant was charged, the trial court entered a "Weekend/Holiday Initial Appearance Order," finding probable cause to hold defendant in custody until a "First Appearance" hearing, at which time conditions of release or pretrial detention were to be determined. The court scheduled the "First Appearance" hearing for Tuesday, October 15, 2024, since October 14, 2024, was a court holiday. That same day, the State filed a verified petition to detain, alleging defendant was charged with a detainable offense and his pretrial release posed a real and present threat to the safety of any person or the community. All pleadings were dated October 13, 2024, but were not file stamped until October 15, 2024, when the courthouse reopened after the holiday.

¶ 6                              B. Pretrial Detention Hearing

¶ 7          The pretrial detention hearing was held on Tuesday, October 15, 2024. Defendant was present via Zoom (from the Livingston County jail) and represented by appointed counsel for the detention hearing only.

¶ 8          The State recited the probable cause statement and proffered the following evidence. On Saturday, October 12, 2024, police responded to a single vehicle crash on Illinois Route 23. Police spoke with the victim, L.B., who explained her husband, defendant, had picked her up from work and had become very "possessive" as he drove her around. After L.B.

- 2 -

indicated she wanted to go home, defendant began punching her in the side of her head. She was unable to get out of the car because defendant was driving too fast. Defendant pulled L.B. by the hair toward the center console, and she attempted to disable the car by putting it in neutral and pressing the ignition button. Defendant then stated "he was going to kill them both on a highway, meaning the interstate," but he was unable to get on the interstate. When L.B. attempted to call for help, defendant threw her phone out of the window. Defendant then attempted to drive toward telephone poles in a ditch. L.B. grabbed the wheel and was able to prevent them from hitting the first pole but was unable to avoid the second pole, which resulted in a crash. L.B. got out of the car and flagged down a passerby for help. At the same time, defendant got out of the car and laid down in the roadway. L.B. suffered swelling to her left jaw above her left eye and her left shoulder area, cuts and scrapes, and bruising on her bicep and left eye.

¶ 9 The State also submitted the pretrial investigation report. The State acknowledged defendant scored a 3 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) (which is a tool to assess the risk of a defendant failing to appear or being arrested again if released), but he scored a 9 out of 13 on the Ontario Domestic Assault Risk Assessment (ODARA) (which is a tool to assess the likelihood of a person committing domestic violence again). Defendant's ODARA score represented a 74% chance of recidivism, and only 6% of individuals received that score or higher. In addition, the State mentioned defendant's prior domestic battery convictions and requested he be detained pending trial.

¶ 10 In response, defendant's counsel argued the State did not meet its burden to justify denying him pretrial release. Defendant denied the allegations in the information. Further, counsel argued defendant's VPRAI-R score was low and his prior offenses were over 12 years old. In addition, defendant's counsel argued defendant's agreement to abide by all pretrial

conditions, including GPS monitoring, reporting requirements, and testing by pretrial services, would alleviate any risk he posed.

¶ 11        After hearing argument from both sides, the trial court noted the nature and circumstances of the offense were "very alarming" and the totality of the circumstances showed defendant was a risk to himself, L.B., and the community. The court found the State proved by clear and convincing evidence the proof was evident or the presumption great that defendant committed an offense for which he would be statutorily eligible for detention under the dangerousness standard. The court then noted defendant's prior record of violent behavior, including domestic battery charges, a history of violating court orders, and a history of violating orders of protection. In addition, defendant had prior community-service-based sentences revoked. The court acknowledged defendant's low VPRAI-R score, but it determined the score did not adequately reflect the information set forth in the report, which included a "considerable history" of domestic battery charges and violating orders of protection. The court concluded the ODARA score more properly reflected the risk defendant posed to L.B. and the community. After reviewing the evidence, the court determined any mitigating conditions, including monitoring, would not properly ensure the safety of L.B. and the community.

¶ 12        The trial court granted the State's petition for detention and denied defendant pretrial release. The court found defendant posed a real and significant danger to the safety of specific persons or the community, he was unlikely to comply with pretrial release conditions, and no combination of conditions would adequately mitigate the safety threats posed by defendant or his failure to appear in court. The court further found less restrictive conditions would be ineffective and would not avoid the safety threat posed by defendant because safety could not be meaningfully achieved with the available conditions, defendant made statements

indicating his intention to harm persons if released, and defendant had a history of disobeying court orders.

¶ 13                     C. The Hearing on Defendant's Motion for Relief

¶ 14        Defendant filed a motion for relief from the order on October 23, 2024. At the hearing on November 6, 2024, defendant argued there were "less restrictive conditions that would avoid real and present threat to the safety of any person or persons or the community based on specific articulable facts of this case." Defendant also reemphasized his low VPRAI-R score, arguing "there was nothing presented as to [his] background and/or characteristics that would overcome the presumption that [he] should *** be released under pretrial conditions."

¶ 15        The trial court denied the motion, noting it did not hear any new information or argument to suggest it "did not either apply all of the proper factors or had a misunderstanding as to some factor or the law." The court reiterated it considered all relevant factors at the original detention hearing and the State proved by clear and convincing evidence defendant was a danger to the community and there were no less restrictive conditions that would alleviate that danger.

¶ 16        This appeal followed.

¶ 17                            II. ANALYSIS

¶ 18        On appeal, defendant does not challenge the trial court's finding that he committed a detainable offense and posed a threat to the safety of any person or persons or the community. Defendant solely challenges the court's finding that no conditions could mitigate the threat he posed, specifically the finding that GPS monitoring was not enough to mitigate any risk. Alternatively, defendant argues his trial counsel was ineffective for failing to object to the timeliness of the State's petition to deny his pretrial release.

¶ 19       Section 110-2(a) of the Code provides that all criminal defendants are presumed eligible for pretrial release, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2022). To deny a defendant pretrial release under section 110-6.1(e)(1)-(3)(i) of the Code (*id.* § 110-6.1(e)(1)-(3)(i)), the State must prove by clear and convincing evidence: (1) the proof is evident or the presumption great the defendant committed a detainable offense; (2) the defendant's release would pose "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and (3) "no condition or combination of conditions" can mitigate the threat. "In each case, a court must conduct an 'individualized' assessment of the propriety of detaining the defendant versus releasing him or her with conditions. [Citation.] '[N]o single factor or standard may be used exclusively to order detention.' " *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (quoting 725 ILCS 5/110-6.1(f)(7) (West 2022)). We review a trial court's decision regarding pretrial release for an abuse of discretion. See *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 13. An abuse of discretion will be found when a decision is arbitrary, fanciful, or unreasonable or when the decision is one with which no reasonable person would agree. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 20       A. No Mitigating Conditions Would Curb the Risk Defendant Posed

¶ 21       The sole issue before this court is whether the trial court abused its discretion in finding the third requirement in denying pretrial release, namely, whether no condition or combination of conditions could mitigate the real and present threat to the safety of any person, persons, or the community was proven. 725 ILCS 5/110-6.1(e)(3) (West 2022). We conclude the trial court's decision was supported by the record and there was no abuse of discretion.

¶ 22       A finding of dangerousness alone does not automatically warrant pretrial detention. See *Atterberry*, 2023, IL App (4th) 231028, ¶ 18 (finding pretrial detention requires

more than a detainable offense and a threat to public safety). "Instead, the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* Trial courts must also consider the "nature and circumstances" of the charged offense and "the weight of the evidence." 725 ILCS 5/110-5(a)(1), (2) (West 2022). "In each case, a court must conduct an 'individualized' assessment of the propriety of detaining the defendant versus releasing him or her with conditions." *Atterberry*, 2023 IL App (4th) 231028, ¶ 15. If the trial court decides to deny pretrial release, the detention order must include findings "summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 23    The record reveals the trial court found the "nature and circumstances" of defendant's offense "very alarming." We agree. Defendant battered L.B., drove erratically, and intentionally crashed the car, posing a danger to himself, her, and the community. Further, the court noted defendant's "considerable history," including prior charges of domestic violence.

¶ 24    Defendant's insistence that GPS monitoring would be sufficient to mitigate any risk he poses to L.B. and the community is unconvincing. The trial court found no condition or combination of conditions would mitigate the threat posed by defendant, and this is supported by the record. Not only has defendant indicated a present desire to kill L.B. (and himself in the process), but he also established a present danger to the community (attempting to use the interstate at a high speed to kill L.B. and then crashing into roadside poles when he could not get on the interstate). In addition, defendant exhibited a pattern of disobeying court orders, including

orders of protection. Defendant had also been given multiple community-based sentences, which were revoked and vacated. Based on defendant's ODARA score, he has a high likelihood of committing domestic battery again. Defendant's dangerousness to L.B., the community, and even himself is not mitigated by the use of GPS because GPS does not curb his present desire to kill L.B. and the reckless behavior he is willing to engage in to do so.

¶ 25    For the reasons above, the record supports the trial court's finding the State showed by clear and convincing evidence the proof was evident or the presumption great that there were no mitigating conditions that would thwart the risk defendant posed. We conclude the trial court's decision was not arbitrary, fanciful, or unreasonable, and thus, the court did not abuse its discretion in denying defendant's pretrial release.

¶ 26                      B. Ineffective Assistance of Counsel

¶ 27    Defendant alternatively argues this court should reverse the trial court's decision to deny his pretrial release because he was denied effective assistance of counsel when his attorney failed to object to the timeliness of the State's verified petition to deny pretrial release. We disagree.

¶ 28    Every criminal defendant is guaranteed the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). The standard established in *Strickland* provides that to prevail on an ineffective assistance of counsel claim, a defendant must show counsel's representation fell below an objective standard of reasonableness and he was prejudiced as a result. *People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999). However, " 'the absence of error nullifies any ineffective assistance of counsel argument because counsel's performance is not deficient for failing to raise a meritless issue.' " *People v. Jones*, 2023 IL App (4th) 230837, ¶ 24 (quoting *People v. Stone*,

- 8 -

2018 IL App (3d) 160171, ¶ 20).

¶ 29        Here, defendant was charged by information on Sunday, October 13, 2024. Defendant argues this was his first appearance and because the petition to detain was not filed simultaneously, it is untimely. In support of his argument, defendant cites section 110-6.1(c)(1) of the Code, which provides, "A petition may be filed without prior notice to the defendant at the first appearance before a judge." 725 ILCS 5/110-6.1(c)(1) (West 2022). A review of the documents filed with the trial court in this case shows the following: (1) the information charging defendant with domestic battery was dated October 13, 2024, and file-stamped October 15, 2024, (2) the State's verified petition to detain defendant was dated October 13, 2024, and file-stamped October 15, 2024, and (3) the "Weekend/Holiday Initial Appearance Order" (finding probable cause to hold defendant until his "First Appearance" hearing to be held on October 15, 2024) was dated October 13, 2024, and file-stamped on October 15, 2024. Contrary to defendant's assertion, there is nothing in the record to suggest that the information and petition were not, in fact, submitted to the court simultaneously. It is the appellant's burden to present a sufficiently complete record of the proceedings at the trial court level to support his claim of error, and "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Due to the ambiguity in the record resulting from there being no report of the proceedings that took place on October 13, 2024, this court will not assume error.

¶ 30        Even if the record was sufficient to find error in this instance, defendant is not entitled to relief under *Strickland* because he is unable to show his counsel's failure to object to the petition as untimely resulted in prejudice. "*Strickland* prejudice has always focused on the outcome of the case itself." *People v. Gilbert*, 2024 IL App (5th) 230923-U, ¶ 56 (Vaughan, P.J.,

- 9 -

specially concurring). Defendant has alleged no facts or argument to show that the pretrial detention hearing would have any bearing on the ultimate, and yet undetermined, outcome of his pending criminal charges. Without the decisive outcome of the pending criminal charges, this court is precluded from engaging in any analysis of prejudice, and the claim for ineffective assistance of counsel is premature, as the detention decision has not closed. Detention must be revisited at every subsequent court date. See *People v. Walton*, 2024 IL App (4th) 240541, ¶¶ 20, 27 (noting the court's inherent authority to modify interlocutory orders and citing section 110-6.1(i-5) of the Code (725 ILCS 5/110-6.1(i-5) (West 2022)) in finding the court's obligation to review the necessity of detention at future court dates).

¶ 31 Based on the foregoing, defendant's ineffective assistance of counsel claim fails.

¶ 32 III. CONCLUSION

¶ 33 For the reasons stated, we affirm the trial court's judgment.

¶ 34 Affirmed.